## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRAHAM B. SPANIER, | ) | |
| | ) | |
| Petitioner, | ) | No. _____ |
| | ) | |
| v. | ) | Place of Confinement: Dauphin |
| | ) | County Probation Services |
| CHAD LIBBY, Director, Dauphin | ) | |
| County Probation Services; and | ) | |
| JOSH SHAPIRO, Attorney | ) | |
| General of Pennsylvania, | ) | |
| | ) | |
| Respondents. | ) | |

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Pursuant to 28 U.S.C. § 2254, Graham B. Spanier petitions this Court for a writ of habeas corpus and in support states the following:

1.  This Petition is filed by Dr. Graham B. Spanier, the former President of Pennsylvania State University, who was initially charged in November 2012 with eight criminal counts arising from his actions in connection with an alleged report in February 2001 of Jerry Sandusky's abuse of a minor child in a shower on Penn State's campus and the 2010-12 investigation into Sandusky's conduct. After the dismissal of most of these counts and a jury trial on the remaining counts, Dr. Spanier was convicted of a single misdemeanor count of child endangerment. This conviction violates Dr. Spanier's rights under the United States Constitution because (a) it was based on a criminal statute not in effect until six years after the

alleged criminal conduct, (b) the jury was instructed that it could convict Dr.

Spanier on the basis of the later-enacted criminal statute rather than the statute in

effect at the time of the alleged criminal conduct, and (c) the conviction was

upheld on the basis of a statute-of-limitations exception that the Commonwealth

did not raise before or at trial.

**Procedural History:**

2.  This Petition challenges a judgment entered by the Court of Common Pleas

of Dauphin County, Pennsylvania, No. CP-22-CR-0003615-2013, following Dr.

Spanier's March 24, 2017 conviction by a jury on one misdemeanor count of

endangering the welfare of a child, 18 PA. C.S. § 4304(a)(1).

3.  On June 2, 2017, Dr. Spanier was sentenced on this conviction to four to

twelve months of confinement followed by two years of probation.

4.  As of the filing of this Petition, Dr. Spanier has not yet started to serve his

sentence, but is currently under the supervision of the Dauphin County Probation

Services. Dr. Spanier expects to begin serving his sentence shortly.

5.  Dr. Spanier's plea in the matter was "not guilty."

6.  Dr. Spanier's conviction was the result of a jury trial.

7.  Dr. Spanier did not testify at a pretrial hearing, trial, or post-trial hearing.

8.  Dr. Spanier appealed his conviction to the Superior Court of Pennsylvania,

No. 1093 MDA 2017, raising the following grounds for appeal:

a. Where the prosecution was commenced in November 2012, and the only evidence presented at trial regarding the charge of conviction involved conduct in February 2001, and the jury rejected the only argument the Commonwealth made for an exception to the two-year statute of limitations—that Dr. Spanier engaged in a course of conduct—did the trial court err in not entering judgment of acquittal?

b. Where the Commonwealth presented no evidence of a duty of care that Dr. Spanier owed any minor child or that he had any direct interaction with minor children or was the point person for abuse allegations or supervised the individual who abused minor children on campus, did the trial court err in not entering judgment of acquittal?

c. Where the 2001 version of the child-endangerment statute only imposed liability on a parent, guardian, or other person supervising the welfare of a child, and Dr. Spanier was convicted for employing or supervising someone else who was supervising the welfare of a child—a category added to the statute in 2007—did his conviction violate the Due Process and Ex Post Facto Clauses of the state and federal constitutions?

d. Where Dr. Spanier requested that the jury be instructed on the statute of limitations, did the trial court err in denying this request?

e.  Where the only conduct at issue occurred in 2001, did the trial court err in denying Dr. Spanier's request to instruct the jury on the 2001 version of the child-endangerment statute rather than the 2007 version?

f.  Where the standard jury instructions for child endangerment are not a complete statement of the law, did the trial court err in using them?

9.  The Superior Court affirmed Dr. Spanier's conviction on June 26, 2018, in a 2-1 decision. *Commonwealth v. Spanier*, 192 A.3d 141 (Pa. Super. 2018) (attached as Exhibit A); *see also id.* at 155 (Ransom, J., dissenting).

10.  Dr. Spanier's request for re-argument was denied. *Commonwealth v. Spanier*, No. 1093 MDA 2017, 2018 Pa. Super. LEXIS 996 (Sept. 7, 2018).

11.  Dr. Spanier filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, No. 639 MAL 2018, raising the following grounds for appeal:

a.  Does the Superior Court's decision conflict with precedent holding that the Commonwealth is required to provide a defendant notice of the specific statute-of-limitation exception on which it relies to meet its burden of proving that a prosecution is timely, where the court affirmed a conviction on the basis of a statute-of-limitations exception the Commonwealth never raised at any time before or during trial?

b.  Does the Superior Court's decision conflict with precedent holding that a defendant may not be convicted unless the jury finds that a prosecution is

timely, where defendant raised a statute-of-limitations defense and

requested that the jury be charged on this defense?

   c. Does the Superior Court's decision conflict with precedent holding that

the Ex Post Facto and Due Process Clauses of the state and federal

constitutions preclude a conviction based on a criminal statute enacted

after the conduct on which the conviction is based, where the jury was

instructed on the basis of language added to the applicable statute six

years after the conduct on which the conviction was based?

12. The Supreme Court of Pennsylvania denied the petition. *Commonwealth v.*

*Spanier*, No. 639 MAL 2018, 2019 Pa. LEXIS 1155 (Feb. 21, 2019).

13. Dr. Spanier did not file a petition for certiorari in the Supreme Court.

14. Dr. Spanier filed the following other petitions, applications, or motions

concerning this judgment of conviction in any state court:

   a. A June 7, 2017 post-sentence motion for judgment of acquittal or, in the

alternative, a new trial, in the Court of Common Pleas, raising the same

issues he later raised in his Superior Court appeal. No hearing was held

on the motion. The motion was denied on July 5, 2017.

   b. A July 10, 2018 application in the Superior Court of Pennsylvania

requesting (a) recusal of Judge Victor P. Stabile, author of the court's

majority opinion, on the basis of his failure to disclose his involvement in

a prior dispute with, and criticism of, Dr. Spanier involving the

Dickinson School of Law, and (b) vacatur of the Superior Court's

decision. No hearing was held. The application was denied.

*Commonwealth v. Spanier*, No. 1093 MDA 2017, 2018 Pa. Super.

Unpub. LEXIS 2897 (Aug. 10, 2018).

**Ground 1.   Unconstitutional Application of 2007 Criminal Statute to 2001 Conduct.**

15.   Dr. Spanier's state-court conviction and sentence are based on language

added to the Pennsylvania child-endangerment statute (18 PA. C.S. § 4304) in

2007, which criminalized conduct that was not criminal in 2001—*i.e.*, endangering

the welfare of a child by employing or supervising someone else who supervised

the welfare of a child—in violation of the Ex Post Facto and Due Process Clauses

of the United States Constitution. *See* U.S. CONST. art. I, § 10; amend. XIV, § 1.

16.   In 2001, Dr. Spanier was the President of Pennsylvania State University. At

that time, Timothy Curley was the athletic director at Penn State and Gary Schultz

was the senior vice president for finance and business. Jerry Sandusky had retired

as a Penn State assistant football coach and employee at least two years earlier.

17.   At his March 2017 trial, the only evidence that was presented of Dr.

Spanier's involvement in addressing alleged reports of Jerry Sandusky's abuse of

minor children on Penn State's campus involved meetings and written

communications among Dr. Spanier, Curley, and Schultz in February 2001. *See*

*Spanier*, 192 A.3d at 143.

18.   The Commonwealth argued at trial that Dr. Spanier endangered the welfare of a child when, in February 2001, he concurred in a plan to ban Sandusky from bringing children to Penn State's campus and to inform Sandusky's employer of the report of Sandusky showering with a child, but not to initially inform law-enforcement or child-welfare authorities of the report. *Id.*; *see also Commonwealth v. Spanier*, No. CP-22-CR-0003615-2013, N.T. 3/23/17 at 83 (Commw. Closing Arg.) (attached as Exhibit C). The Commonwealth also argued that Dr. Spanier engaged in a "course of conduct" of endangering the welfare of children by allegedly remaining silent after 2001 about what he allegedly knew. *Id.*; *see also Spanier*, 192 A.3d at 144.

19.   The 2001 version of the child-endangerment statute criminalized the knowing endangerment of a child's welfare through the violation of a duty of care, protection, or support by a parent, guardian, or other person supervising the welfare of a child. *See* 18 PA. C.S. § 4304(a) (2001). Thus, someone who was not a child's parent or guardian could be found guilty of violating the statute *only* if he was supervising the welfare of a child.

20.   In 2007, the child-endangerment statute was amended to expand the categories of individuals subject to criminal liability under the statute. The 2007 version of the statute criminalized the knowing endangerment of a child's welfare through the violation of a duty of care, protection, or support by a parent, guardian, other person supervising the welfare of a child, *or someone employing or*

*supervising* another person supervising the welfare of a child. *See* 18 PA. C.S.

§ 4304(a)(1) (2007). Thus, under the 2007 statute, someone who was *not*

supervising the welfare of a child could be found guilty of violating the statute if

he was employing or supervising someone else who was doing so.

21.   At Dr. Spanier's trial, over his objections, the jury was instructed on the

basis of the 2007 statute. Specifically, it was told that the third of four elements for

the child-endangerment charge on which it eventually convicted Dr. Spanier was

that "the defendant was at the time a parent, guardian, person supervising the

welfare of a child under the age of 18, *or* a person that employs or supervises such

a person." *Commonwealth v. Spanier*, No. CP-22-CR-0003615-2013, N.T. 3/23/17

at 108 (Jury Instr.) (attached as Exhibit D) (emphasis added).

22.   The jury returned a verdict of guilty on the child-endangerment charge, but

acquitted Dr. Spanier of a second child-endangerment charge and a conspiracy

charge. *See Spanier*, 192 A.3d at 144. The jury also found that Dr. Spanier had not

engaged in a course of conduct with respect to the child-endangerment charge. *Id.*

23.   In rejecting this Ground for relief, the state trial court relied on the decision

in *Commonwealth v. Lynn*, 114 A.3d 796 (Pa. 2015), and held that the 2001

version of the child-endangerment statute "encompassed persons who employed or

supervised persons who supervised the welfare of children" (despite that this

language was not added to the statute until 2007), and that Dr. Spanier was "a

person who employed or supervised persons who supervised the welfare of

children." *Commonwealth v. Spanier*, No. CP-22-CR-0003615-2013, Slip Op. at

17 (C.P. Dauphin Cnty. Sept. 22, 2017) (attached as Exhibit B).

24.   Thus, according to the trial court, Dr. Spanier was properly convicted of

child endangerment as someone who, in 2001, was employing or supervising

persons who supervised the welfare of children, even if Dr. Spanier himself was

not supervising the welfare of children. *Id.*

25.   In fact, the *Lynn* court did not hold—nor could it have held consistent with

the United States Constitution—that a defendant could be convicted under the pre-

2007 child-endangerment statute if he did not himself supervise the welfare of

children, but merely employed or supervised someone else who did. Rather, it

simply held that someone could be found to have supervised the welfare of a child

without directly interacting with that child. *Lynn*, 114 A.3d at 823-24. Notably,

unlike the jury in Dr. Spanier's case, the jury in *Lynn* was instructed that it was

required to find that the defendant was "a parent, guardian or person supervising

the welfare of the child." *Commonwealth v. Lynn*, No. CP-51-CR-0003530-2011,

N.T. 6/1/12 at 77 (Jury Instr.) (attached as Exhibit E); *see also Commonwealth v.

Lynn*, 83 A.3d 435, 447 (Pa. Super. 2013) ("It is undisputed that Appellant was

tried under the pre-amended version of the [child-endangerment] statute.").

26.   In affirming Dr. Spanier's conviction, the Superior Court misunderstood

this argument and held that his conviction for employing or supervising someone

else who was supervising the welfare of children did not violate his constitutional

rights because, under *Lynn*, it did not matter that Dr. Spanier, Curley, and Schultz

did not directly interact with Sandusky's victims. *Spanier*, 192 A.3d at 154.

27.   Dr. Spanier's conviction and sentence on the basis of a 2007 law that

criminalized conduct—the endangering of a child's welfare by someone who

merely employed or supervised someone else who supervised the welfare of

children—that was not criminal when Dr. Spanier's conduct occurred constitutes a

conviction on the basis of an ex post facto law, in violation of Article I, Section 10,

of the United States Constitution. *See, e.g.*, *Carmell v. Texas*, 529 U.S. 513, 521-22

(2000) (describing one category of ex post facto laws as "every law that makes an

action done before the passing of the law, and which was innocent when done,

criminal; and punishes such action" (emphasis omitted)); *see also Stogner v.*

*California*, 539 U.S. 607, 610 (2003) (holding that state law that "authorized

criminal prosecutions that the passage of time had previously barred" and that

"was enacted after prior limitations periods for [defendant's] alleged offenses had

expired . . . produce[d] the kind of retroactivity that the Constitution forbids").

28.   Moreover, the state courts' upholding of that conviction on the basis of a

statute enacted six years after the conduct at issue is a violation of the Due Process

Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g.*,

*Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) ("limitations on *ex post*

*facto* judicial decisionmaking are inherent in the notion of due process"); *Marks v.*

*United States*, 430 U.S. 188, 191-92 (1977) (holding that due process precludes a

court from convicting a defendant on the basis of a statute enacted after the conduct at issue).

29. The state courts' decisions—rejecting Dr. Spanier's claim that his conviction for violating a 2007 criminal statute, on the basis of conduct in 2001, violates the constitutional protections against retroactive application of criminal statutes—are contrary to, and unreasonable applications of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

30. Dr. Spanier exhausted his state remedies regarding Ground 1, having raised this issue in the state trial court (before, during, and after trial) and in his direct appeal to the Superior Court of Pennsylvania. Both courts rejected the argument on the merits. *See Spanier*, No. CP-22-CR-0003615-2013, Slip Op. at 17; *Spanier*, 192 A.3d at 154. Dr. Spanier also sought further review of this issue in the Supreme Court of Pennsylvania, but that court denied review.

31. Dr. Spanier has not raised this issue in state post-conviction proceedings or state habeas corpus proceedings.

**Ground 2. Unconstitutional Jury Instructions Allowing Conviction on the Basis of 2007 Statute for 2001 Conduct.**

32. Dr. Spanier incorporates into Ground 2 the averments set forth in paragraphs 1 through 31 above.

33. As noted in paragraph 21 above, the jury at Dr. Spanier's trial was instructed that it could convict him on the child-endangerment charge if, among

other things, it concluded that he was (1) a parent, (2) a guardian, (3) a person supervising the welfare of a child, *or* (4) a person that employs or supervises another person supervising the welfare of a child.

34.  No evidence was offered that Dr. Spanier was an endangered child's parent or guardian. Thus, the jury was instructed that it could convict Dr. Spanier even if it concluded that he was ***not*** supervising the welfare of a child, ***so long as it concluded that*** he was employing or supervising someone else who was.

35.  It is not possible to know on what basis the jury found that the prosecution met its burden to prove the third element of the child-endangerment charge. It may have concluded that Dr. Spanier was supervising the welfare of a child. Or it may have concluded that he was not, but that he was employing or supervising someone else who was. The jury was instructed that it could convict Dr. Spanier on ***either*** basis. Yet, the child-endangerment statute only criminalized conduct by someone in the first category in 2001. The second category was not added until 2007. As such, because the jury may have "erroneously convicted [Dr. Spanier] based exclusively on noncriminal, preenactment conduct," Dr. Spanier's due process rights were violated. *United States v. Marcus*, 560 U.S. 258, 264 (2010); *see also* paragraphs 27 and 28, *supra* (explaining that a conviction based on conduct that was not criminalized until after the conduct occurred violates the ex post facto and notice limitations imposed by the United States Constitution).

36.   Dr. Spanier's conviction must be vacated because it is impossible to determine if the jury convicted him on the basis of language from the 2001 version of the child-endangerment statute or on the basis of language added six years later, in 2007. *See Sandstrom v. Montana*, 442 U.S. 510, 526 (1979) (noting the long-established rule that, where a jury may have relied on a permissible basis to convict a defendant, but also may have relied on a constitutionally flawed basis, the conviction must be vacated).

37.   The trial court summarily rejected Dr. Spanier's argument that the constitutional error in instructing the jury on the basis of a later-enacted statute required a new trial, holding that application of the 2007 version of the statute was proper. *Spanier*, No. CP-22-CR-0003615-2013, Slip Op. at 23. The Superior Court also gave this claim short shrift. *Spanier*, 192 A.3d at 154 ("On the facts of this case, the trial court's instruction on the 2007 version of the [child-endangerment] statute did not result in an inaccurate statement of the law.").

38.   The state courts' decisions—rejecting Dr. Spanier's claim that his conviction for conduct in 2001 by a jury instructed on the basis of a 2007 statute violates the constitutional protections against retroactive application of criminal statutes—are contrary to, and unreasonable applications of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

39.   Dr. Spanier exhausted his state remedies regarding Ground 2, having raised this issue in the state trial court (before, during, and after trial) and in his direct

appeal to the Superior Court of Pennsylvania. Both courts rejected the argument on

the merits. *See Spanier*, No. CP-22-CR-0003615-2013, Slip Op. at 23; *Spanier*,

192 A.3d at 154. Dr. Spanier also sought further review of this issue in the

Supreme Court of Pennsylvania, but that court denied review.

40.  Dr. Spanier has not raised this issue in state post-conviction proceedings or

state habeas corpus proceedings.

**Ground 3.   Unconstitutional Application of Statute-of-Limitations Exceptions for Which the Prosecution Provided No Notice Before or at Trial.**

41.  Dr. Spanier incorporates into Ground 3 the averments set forth in

paragraphs 1 through 40 above.

42.  A criminal defendant has a constitutional right to notice of the specifics of

the charges he will face at trial so that he has an adequate opportunity to prepare

and present a challenge to those charges at trial. *See* U.S. CONST. amend. XIV, § 1;

*Cole v. Arkansas*, 333 U.S. 196, 201 (1948). More specifically, a defendant is

entitled to know the elements of the charges against him. *See, e.g.*, *Rabe v.

Washington*, 405 U.S. 313, 316 (1972) (per curiam); *Groppi v. Leslie*, 404 U.S.

496, 502 (1972) ("we have stated time and again that reasonable notice of a charge

and an opportunity to be heard in defense before punishment is imposed are basic

in our system of jurisprudence").

43.  In Pennsylvania, one element of every criminal charge is conduct that

"negatives a defense under the statute of limitation." 18 PA. C.S. § 103. Thus, due

process requires that the Commonwealth provide notice to a criminal defendant of the basis on which it intends to meet this element of a criminal charge and negate a defense under the statute of limitations, as well as provide the defendant an opportunity to challenge the element at trial.

44.   The statute of limitations for the child-endangerment charge on which Dr. Spanier was convicted is two years. 42 PA. C.S. § 5552(a).

45.   As set forth above in paragraph 17, Dr. Spanier's conduct on which the Commonwealth relied for his child-endangerment conviction occurred in February 2001. Yet the charges were not brought against him until November 2012, more than eleven years later. Dr. Spanier repeatedly raised a defense of the statute of limitations before and at trial, and sought to have the child-endangerment charge dismissed on this basis.

46.   In response to Dr. Spanier's defense of the statute of limitations, the Commonwealth made only one argument before or during trial—that Dr. Spanier engaged in a course of conduct of endangering the welfare of children and under Pennsylvania law the limitations period did not commence until the course of conduct terminated. *See* 42 PA. C.S. § 5552(d).

47.   But at trial, the jury found that Dr. Spanier had *not* engaged in a course of conduct, and thus, the jury rejected the only basis on which the Commonwealth relied to negate Dr. Spanier's statute-of-limitations defense and establish the timeliness element of the charge.

48.  After trial and after Dr. Spanier had appealed from his conviction, however, the trial court held that a tolling exception on which the Commonwealth had never relied (or even mentioned) rendered the prosecution timely. *See Spanier*, No. CP-22-CR-0003615-2013, Slip Op. at 9-11 (citing 42 PA. C.S. § 5552(c)(3)).

49.  In order for this provision to render the prosecution timely, the Commonwealth had to prove beyond a reasonable doubt that Sandusky's victim about whom Dr. Spanier allegedly had received a report in February 2001 was under approximately fourteen years of age at that time.[1] In fact, the Commonwealth claimed not to know the identity of this victim and presented only cursory evidence of the child's rough, apparent, estimated age at trial.

50.  More significant, because the Commonwealth provided no notice to Dr. Spanier that it intended to rely on this exception to the statute of limitations to meet this element of the child-endangerment charge, Dr. Spanier was unable to prepare or present any challenge to the miniscule evidence presented of the child's age.

51.  The Commonwealth's failure to provide notice that it would be relying on the statute-of-limitations exception in Section 5552(c)(3) to meet this element of

---

[1] In 2001, Section 5552(c)(3) tolled the limitations period until a victim turned twenty years of age. *See* 42 PA. C.S. § 5552(c)(3) (2001); Act of Dec. 19, 1990, P.L. 1341, No. 208. As of January 29, 2007, the provision extended tolling to fifty years of age. *See* 42 PA. C.S. § 5552(c)(3) (2007); Act of Nov. 29, 2006, P.L. 1581, No. 179, § 7. For the longer period to apply, the limitations period must not have run before January 29, 2007. *See Stogner*, 539 U.S. at 610; *Commonwealth v. Harvey*, 542 A.2d 1027, 1030-31 (Pa. Super. 1988). Thus, the child at issue, who was observed in a shower on February 9, 2001, had to be under 14 years, 11 days old at that time for the limitations period not to have run before it was extended.

the child-endangerment charge and its denial of an opportunity for Dr. Spanier to challenge application of this exception at trial violated his right to due process and prejudiced his ability to defend against the child-endangerment charge. *See* U.S. CONST. amend. XIV, § 1; *Gray v. Netherland*, 518 U.S. 152, 167 (1996) ("A defendant's right to notice of the charges against which he must defend is well established."); *Gardner v. Florida*, 430 U.S. 349, 353, 362 (1977) (plurality) (holding that a defendant's due process rights were violated when his sentence "was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain"); *see also Rabe*, 405 U.S. at 316; *Groppi*, 404 U.S. at 502; *Cole*, 333 U.S. at 201; *cf. Stogner*, 539 U.S. at 632-33 ("a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution").

52. The Superior Court majority held that Dr. Spanier's rights were not violated by the trial court's post-trial invocation of a statute-of-limitations exception never relied on or mentioned by the Commonwealth. *Spanier*, 192 A.3d at 145-47. According to the majority, it did not matter that the Commonwealth never invoked this provision, even in response to Dr. Spanier's challenges to the timeliness of the prosecution, because the criminal complaint supposedly "put Appellant on notice of *all facts* that support the application of § 5552(c)(3)." *Id.* at 145 n.9 (emphasis added). The majority also held that Dr. Spanier's conviction

could be upheld on the basis of this exception, despite the lack of a jury finding

that the Commonwealth had proven the facts necessary to apply it. *Id.* at 154.

53. The Superior Court dissent concluded that "the Commonwealth violated

Appellant's due process rights when it failed to inform him of its intent to rely

upon an exception to the statute of limitations at a reasonable time before trial." *Id.*

at 155 (Ransom, J., dissenting); *see also id.* at 160 ("the Commonwealth's failure

to invoke the exception violated the due process requirements of notice"); *id.* at

164 ("Essentially, provided the defendant, at some reasonable time prior to trial is

apprised that the Commonwealth will seek to toll the statute, the due process

requirements of notice are met. The notice itself, and accordingly the opportunity

to defend, is the operative and most important aspect: this is the due process

concern that must be satisfied."); *id.* ("Absent proper pretrial notice, the

requirements of due process were not met.").

54. The state courts' decisions—rejecting Dr. Spanier's claim that his

conviction on the basis of a statute-of-limitations exception about which he did not

receive notice before or during trial and which he was not given an opportunity to

challenge at trial violates his constitutional right to due process—are contrary to,

and unreasonable applications of, clearly established Supreme Court precedent. *See*

28 U.S.C. § 2254(d)(1).

55. Dr. Spanier exhausted his state remedies regarding Ground 3, having raised

this issue in his direct appeal to the Superior Court of Pennsylvania, the first time it

could be raised after the trial court invoked the statute-of-limitations exception never relied on by the Commonwealth. Dr. Spanier also raised the statute-of-limitations defense repeatedly in the trial court (before, during, and after trial). Both courts rejected the statute-of-limitations argument on the merits. *See Spanier*, No. CP-22-CR-0003615-2013, Slip Op. at 9-11; *Spanier*, 192 A.3d at 146-49. *But see id.* at 156-65 (Ransom, J., dissenting). Dr. Spanier also sought further review of this issue in the Supreme Court of Pennsylvania, but that court denied review.

56.  Dr. Spanier has not raised this issue in state post-conviction proceedings or state habeas corpus proceedings.

**Additional Matters:**

57.  All of the grounds for relief in this Petition have been presented to the highest state court having jurisdiction—*i.e.*, the Supreme Court of Pennsylvania.

58.  There is no ground for relief in this Petition that has not been presented in some state or federal court.

59.  Dr. Spanier has not previously filed any type of petition, application, or motion in a federal court regarding the judgment he is challenging.

60.  Dr. Spanier does not have any petition or appeal now pending in any court, either state or federal, for the judgment he is challenging.

61.  The following attorneys at Schnader Harrison Segal & Lewis LLP (1600 Market Street, Suite 3600, Philadelphia, PA 19103) represented Dr. Spanier in each of the following stages of the judgment he is challenging:

a. At preliminary hearing, arraignment, and plea: Timothy K. Lewis, Elizabeth K. Ainslie, Bruce P. Merenstein, Emily J. Hanlon.

b. At trial: Samuel W. Silver, Bruce P. Merenstein, Emily J. Hanlon.

c. At sentencing and on appeal: Timothy K. Lewis, Samuel W. Silver, Bruce P. Merenstein.

d. In any post-conviction proceeding or appeal: n/a.

62. Dr. Spanier does not have any future sentence to serve after he completes the sentence for the judgment that he is challenging.

63. This Petition is timely under 28 U.S.C. § 2244(d), as the Supreme Court of Pennsylvania denied the petition for allowance of appeal on February 21, 2019.

WHEREFORE, Graham B. Spanier requests that the Court issue an order:

a. granting the writ of habeas corpus on the ground that Dr. Spanier is in state custody in violation of the United States Constitution;

b. vacating Dr. Spanier's conviction for child endangerment;

c. requiring Dr. Spanier's immediate and unconditional release from all forms of custody;

d. precluding Dr. Spanier's re-prosecution, or, in the alternative, requiring that the Commonwealth retry Dr. Spanier within 60 days on the misdemeanor child-endangerment charge on which he was convicted or dismiss this charge with prejudice; and

e. granting such further relief to which Dr. Spanier is entitled.

Respectfully submitted,

/s/ Bruce P. Merenstein
Samuel W. Silver, Pa. ID No. 56596
        (application for admission forthcoming)
Bruce P. Merenstein, Pa. ID No. 82609
        (application for admission forthcoming)
Arleigh P. Helfer III, Pa. ID No. 84427
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2309; 2249; 2430
(215) 751-2205 (facsimile)
*Counsel for Petitioner*

Dated: March 22, 2019

**Verification of Petitioner**

I verify under penalty of perjury that the foregoing is true and correct.

Executed on  3/22/19

Petitioner Graham B. Spanier