# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

GRAHAM B. SPANIER,

                Petitioner,

     v.

CHAD LIBBY, Director of Dauphin
County Probation Services, et al.,

                Respondents.

CIVIL ACTION NO. 3:19-CV-523

(MEHALCHICK, M.J.)

## MEMORANDUM

In March 2017, Petitioner, Graham B. Spanier, was convicted in the Dauphin County Court of Common Pleas of one misdemeanor count of endangering the welfare of a child pursuant to 18 Pa. C.S.A. § 4304(a)(1). Spanier now brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asking this Court to set aside that conviction as it violates his rights guaranteed under the United States Constitution, and in particular, that the conviction runs afoul of the *Ex Post Facto* and Due Process clauses of the Constitution.

The crux of Spanier's argument is that he is entitled to habeas relief because he was charged and tried on the basis of a statute that came into effect six years after the conduct at issue. The state courts, relying upon the Pennsylvania Supreme Court's decision in *Com. v. Lynn*, 114 A.3d 796 (Pa. 2015), concluded that the retroactive application of the 2007 statute to Spanier's 2001 conduct was not unconstitutional. Spanier submits that this retroactive application is unreasonable and far more extensive than anyone in 2001 would have been able to reasonably foresee. The Court agrees. For the reasons set forth below, the Court finds that the Pennsylvania state courts unreasonably expanded the scope of the pre-amendment child endangerment statute in such a way that it would have been unforeseeable to Spanier in 2001

that his conduct could result in criminal culpability under § 4304, and in a manner which violates bedrock constitutional principles of due process. For these reasons, the Court grants the petition for writ of habeas corpus.

## I.   STATEMENT OF THE CASE

Spanier seeks federal review via the provisions of 28 U.S.C. § 2254. Specifically, he submits that his conviction violates his rights under the United States Constitution because (1) it was based on a criminal statute not in effect at the time of the alleged criminal conduct; (2) the  jury was instructed that it could convict Petitioner on the basis of the later-enacted criminal statute; and (3) the conviction was upheld on the basis of a statute-of-limitations exception not raised by the Commonwealth before or during trial.

### A.   PROCEEDINGS IN STATE COURT

In February 2001, Spanier, as President of the Pennsylvania State University, became aware of and responded to allegations of sexual abuse of a minor child by Jerry Sandusky, the former defensive coordinator for the Penn State football team.[1] On November 1, 2012, eleven years after the alleged conduct occurred, Spanier was charged in Dauphin County with eight criminal counts – one count of perjury, two counts of endangering the welfare of children

---

[1] Sandusky has since been convicted of 45 counts of sexual abuse.

2

(EWOC), one count of obstruction of justice, three counts of conspiracy, and one count of failure to report suspected child abuse.[2, 3]

Throughout the course of pretrial litigation, all but three of these counts were dismissed – Endangering the Welfare of Children (violating a duty of care, protection, or support); Endangering the Welfare of Children (in an Official Capacity, preventing or interfering with the making of a report of suspected child abuse); and Conspiracy to commit endangering the welfare of children. (Doc. 1-2, at 3). At the conclusion of a jury trial in March 2017, Spanier was convicted of one misdemeanor count of endangering the welfare of a child pursuant to 18 Pa. C.S.A. § 4304(a)(1). He was acquitted of the other charges against him. Importantly for this Court's analysis, he was acquitted of having engaged in a "course of

_____

[2] 18 Pa.C.S.A. §§ 4902, 4304(a)(1); 4304(a)(2), 5101, 903, and 23 Pa.C.S.A. § 6319, respectively.

[3] The parties appear to dispute which version of the Child Endangerment statute applied to Spanier's criminal proceedings. Respondent claims that "[n]o state court has ever held that the 2007 EWOC statute was retroactively applicable to Spanier, that the jury was instructed to apply the 2007 statute as opposed to the 2001 statute, or that he had been convicted under the 2007 statute." (Doc. 21, at 17). Spanier, however, maintains that he was improperly tried and convicted under the 2007 statute. (Doc. 21, at 4). It is evident that the Commonwealth charged Spanier under the 2007 statute, as the criminal complaint filed against him invoked 18 Pa.C.S. § 4304(a)(1) and 18 Pa.C.S. § 4304(a)(2), which provisions that did not exist under the 1995 statute. Further, both the Trial Court and Appellate Court decisions acknowledged that the jury convicted Spanier under 18 Pa.C.S. § 4304(a)(1), which was not in effect until 2007. (Doc. 1-1, at 7; Doc. 1-2, at 19). The State Courts also expressly stated that the jury was instructed on the basis of the 2007 statute. (Doc. 1-1, at 14; Doc. 1-2, at 15). Accordingly, based on the record, the Court is not persuaded by Respondent's effective contention that the 2007 statute was not retroactively applied to Spanier during his criminal proceedings and conviction.

conduct" of child endangerment;  instead, the jury found him guilty of one count stemming

from his conduct in February 2001. (Doc. 1-2, at 3). In June 2017, Spanier was sentenced to

4 to 12 months of incarceration. He is scheduled to report for his sentence on May 1, 2019.

Throughout the trial, Spanier maintains that he objected to the use of the EWOC

Statute because it charged him under the 2007 version of the statute (the "2007 statute"),

instead of under the 1995 version of the statute (the "1995 statute") in effect during his alleged

conduct. (Doc. 23, at 7). However, the Commonwealth asserted that the application of the

2007 statute did not violate Spanier's constitutional rights, as they had charged him "with a

course of conduct that stretched from February of 2001 until 2012," and thus brought him

under the purview of the amended statute. (Doc. 23, at 7). Spanier also filed proposed jury

instructions, which excluded the language added in the 2007 version of the amended EWOC

statute and sought an instruction on the applicable statute of limitations. (Doc. 23, at 7).

However, the trial court used the proposed jury instructions provided by the Commonwealth,

which reflected the language articulated in the 2007 statute, and declined to instruct the jury

on the statute of limitations issue raised by Spanier. (Doc. 23, at 8).

B. POST-TRIAL AND STATE COURT APPELLATE DECISIONS

Spanier filed a post-sentence motion on June 8, 2017, which was subsequently denied

by the state trial court on July 5, 2017. (Doc. 1-2, at 3).  Thereafter, Spanier filed a notice of

appeal, as well as a Rule 1925(b) statement, on July 17, 2017. (Doc. 1-2, at 3). After the trial

court filed its opinion on September 22, 2017, Spanier appealed his conviction to the Superior

Court of Pennsylvania, raising the following grounds:

> (1) "Where the prosecution was commenced in November 2012, and
> the only evidence presented, at trial regarding the charge of
> conviction involved conduct in February 2001, and the jury rejected

4

the only argument the Commonwealth made for an exception to the two-year statute of limitations—that Dr. Spanier engaged in a course of conduct—did the trial court err in not entering judgment of acquittal?"

(2) "Where the Commonwealth presented no evidence of a duty of care that Dr. Spanier owed any minor child or that he had any direct interaction with minor children or was the point person for abuse allegations or supervised the individual who abused minor children on campus, did the trial court err in not entering judgment of acquittal?"

(3) "Where the 2001 version of the child-endangerment statute only imposed liability on a parent, guardian, or other person supervising the welfare of a child, and Dr. Spanier was convicted for employing or supervising someone else who was supervising the welfare of a child—a category added to the statute in 2007—did his conviction violate the Due Process and Ex Post Facto Clauses of the state and federal constitutions?"

(4) "Where Dr. Spanier requested that the jury be instructed on the statute of limitations, did the trial court err in denying this request?"

(5)  "Where the only conduct, at issue occurred in 2001, did the trial court err in denying Dr. Spanier's request to instruct the jury on the 2001 version of the child-endangerment statute rather than the 2007 version?"

(6) "Where the standard jury instructions for child endangerment are not a complete statement of the law, did the trial court err in using them?"

(Doc. 1, at 3-4; Doc. 1-1; Doc. 23-9).

The Superior Court affirmed Spanier's conviction in a written opinion on June 26, 2018. (Doc. 1-1); *Commonwealth v. Spanier*, 192 A.3d 141 (Pa. Super. 2018). In a 2 to 1 decision, the Superior Court found that Spanier's statute of limitations argument was unavailing, as he was "on notice of his potential criminal liability for EWOC," and was thus, in essence, on constructive notice that the statute of limitations exception set forth under 42 Pa.C.S.A. § 5552(c)(3) was applicable to him—even if not expressly invoked by the

5

Commonwealth before or during trial. (Doc. 1-1, at 11). Judge Ransom, however, disagreed on this point, and stated in a dissenting opinion that Spanier's due process rights were violated when the Commonwealth failed to apprise him that they would seek to toll the statute of limitations under § 5552(c)(3). (Doc. 1-1, at 22). According to the dissent, absent proper notice that the Commonwealth would invoke § 5552(c)(3), the requirements of due process were not met because Spanier prepared his defense based on the Commonwealth's express reliance on the course of conduct exception. (Doc. 1-1, at 22).

The Superior Court further found that the evidence was sufficient to convict Spanier under the EWOC statute. (Doc. 1-1). Specifically, relying on the Pennsylvania Supreme Court decision in *Commonwealth v. Lynn*, 114 A.3d 796 (Pa. 2015), the Superior Court noted that the 1995 statute "encompasses all forms of supervision of a child's welfare," and that "supervision is routinely accomplished by subordinates." (Doc. 1-1, at 12). Accordingly, based on the facts before the Superior Court, it concluded that the evidence was sufficient to find Spanier was supervising a child's welfare in accordance with the holding in *Lynn*. (Doc. 1-1, at 13). The Superior Court also determined that Spanier owed a duty of care to the child victimized by Sandusky in 2001. (Doc. 1-1, at 14). Thus, the "absence of direct interaction between [Spanier], Shultz, or Curley and Sandusky's victims" did not preclude Spanier's conviction "under the pre-2007 version of § 4304 as construed in *Lynn*." (Doc. 1-1, at 14). The Superior Court similarly rejected Spanier's arguments regarding the jury instructions, holding that given its "analysis of the statute of limitations and of the *Lynn* Court's treatment of the pre-2007 version of § 4304" there was no reversible error. (Doc. 1-1, at 14).

After a request for re-argument was denied, Spanier filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. (Doc. 1, at 4). The Supreme Court, however, denied Spanier's petition on February 21, 2019. (Doc. 1, at 4).

C. PROCEEDINGS IN FEDERAL COURT

Having challenged his conviction in Pennsylvania state courts, Spanier filed the instant habeas corpus petition on March 22, 2019. (Doc. 1). Respondent Chad Libby filed a Response on April 8, 2019 (Doc. 12), and Respondent Josh Shapiro (hereinafter referred to as "Respondents") filed a Response on April 19, 2019. (Doc. 21). Spanier filed two respective traverses on April 23, 2019. (Doc. 22; Doc. 23).

In his petition, Spanier seeks federal review pursuant to 28 U.S.C. § 2254, and submits that his conviction violates the *Ex Post Facto* and Due Process clauses of the United States Constitution. Specifically, he submits the conviction violates his Constitutional rights in that (1) it was based on a criminal statute not in effect at the time of the alleged criminal conduct; (2) the jury was instructed that it could convict Spanier on the basis of the later-enacted criminal statute; and (3) the conviction was upheld on the basis of a statute-of-limitations exception not raised by the Commonwealth before or during trial. (Doc. 1).

The first two grounds for his petition turn on whether Spanier's constitutional rights were violated when he was charged and the jury instructed under the 2007 version of the child endangerment statute when his purported conduct occurred in 2001. Respondents submit that Pennsylvania state courts have ruled, as a matter of state law, that the prior version of the EWOC statute in effect in 2001 encompassed and rendered criminal the same conduct as did the 2007 version, and therefore that the charge and jury instruction were proper. (Doc. 21).

In his third ground for relief, Spanier submits that he was unconstitutionally deprived of notice that the Commonwealth would be relying on a statute of limitations exception in 42 Pa. C.S. § 5552(c)(3), and that he was denied the opportunity to challenge the application of this exception at trial, therefore prejudicing his ability to defend against the child-endangerment charge. The state trial and appellate courts determined that Spanier was properly put on notice of this exception by virtue of evidence and allegations in the case. Respondents' sole argument on this issue is that the state court rulings are binding on this Court, and that there is no valid basis for disturbing those findings. (Doc. 21).

In addition to their arguments on the merits of Spanier's grounds for relief, Respondents submit that Spanier has failed to exhaust these claims before the state courts, and therefore this Court is precluded from reviewing these procedurally defaulted claims.

Fully briefed, and argued before the undersigned on April 25, 2019, Dr. Spanier's petition is ripe for review.

## II.   EXHAUSTION OF FEDERAL CONSTITUTIONAL CLAIMS IN THE STATE COURTS

Individuals seeking relief under 28 U.S.C. § 2254 must satisfy specific and precise procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a petitioner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. *See Whitney v. Horn*, 280 F.3d. 240, 250 (3d Cir. 2002). Rooted in principles of comity and reflecting the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitution rights, "the exhaustion doctrine is designed to give the state courts a full and fair

opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-845 (1999). In order to satisfy § 2254's exhaustion requirement, the claims included in a federal petition must be fairly presented to the state courts. *Picard v. Connor,* 404 U.S. 270, 275 (1971).

The burden of establishing that such claims were fairly presented falls upon the petitioner. *See Evans v. Court of Common Pleas, Delaware Cnty., Pa.*, 959 F. 2d 1227, 1229 (3d Cir. 1992); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir. 1982), *cert. denied,* 459 U.S. 1115 (1983). It is not sufficient that a "somewhat similar state-law claim was made." *Anderson v. Harless,* 459 U.S. 4, 6 (1982). Yet, the petitioner need not have cited "book and verse" of the federal constitution. *Picard,* 404 U.S., at 277. Thus, the federal habeas court should "look to the substance of the claim presented to the state courts, rather than its technical designation." *Evans*, 959 F.2d, at 1231. To "fairly present" a claim for exhaustion purposes, the petitioner must advance "a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

While this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," *Picard,* 404 U.S., at 276, this requirement is to be applied in a common sense fashion. *Bartone v. Overmeyer*, No. 1:15-CV-2142, 2016 WL 4059686, at *6 (M.D. Pa. June 29, 2016), *report and recommendation adopted sub nom. Bartone v.*

9

*Overmyer*, No. 1:15-CV-2142, 2016 WL 3997436 (M.D. Pa. July 26, 2016). Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without requiring that the petitioner engage in some "talismanic" recitation of specific constitutional claims. *Evans*, 959 F.2d, at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts even if the state courts decline to specifically address that claim. *See Dye v. Hofbauer*, 546 U.S. 1(2005) (per curiam); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).

With these legal benchmarks in mind, the Court turns to the arguments on exhaustion for each of the grounds raised by Spanier in his petition.

### A. Ground One: The Application of the 2007 statute to 2001 Conduct

Respondents asserts that Spanier never meaningfully argued that the judicial interpretation of the 1995 state statute, that actually controlled the outcome of this case, violated his federal Due Process rights under *Bouie* and its progeny. (Doc. 21, at 21). In support of this assertion, the Commonwealth cites the following excerpt from Spanier's brief to the Pennsylvania Superior Court:

> And if this Court upholds the retroactive application of the statute to Dr. Spanier, this would violate his due process rights. See *Marks v. United States*, 430 U.S. 188, 191-92 (1977); *Commonwealth v. Davis*, 760 A.2d 406, 410 (Pa. Super. 2000); U.S. CONST. amend XIV, § 1; PA. CONST. art. 1, § 9.

(Doc. 21, at 20; Doc. 23-9, at 15).

In addition to having raised the concern that the retroactive application of the statute would violate his due process rights, citing both federal and state caselaw, and the pertinent sections of the United States and Pennsylvania Constitutions, Spanier also raised the issue of the retroactive application in his questions for review to the Superior Court:

10

> The state and federal constitutions prohibit the government from imposing punishment for conduct that was not criminal, at the time of the conduct but was later criminalized. In 2001, when the alleged conduct, at issue here occurred, the child-endangerment statute did not encompass someone who was employing or supervising someone else who was supervising the welfare of a minor child; this "employing or supervising" provision was added to the statute in 2007. To the extent Dr. Spanier's child-endangerment conviction was based on his alleged employment or supervision of someone else who was supervising the welfare of a child, did the trial court err in not entering a judgment of acquittal?
>
> Answer below: No.
>
> (Doc. 1-1, at 7; Doc. 23-9, at 7; *Commonwealth v. Spanier*, 192 A.3d 141, 144 (Pa. Super. 2018)).

Respondents submit that "it is unclear what Spanier as arguing" and that nothing in his argument "would put the state court fairly on notice that he was challenging the application of the state courts' interpretation of the 2001 EWOC statute to him." (Doc. 21, at 21). The Court does not agree with this contention.

Spanier argued to the Superior Court that "[t]he state and federal constitutions prohibit the government from imposing punishment for conduct that was not criminal, at the time of the conduct but was later criminalized." Spanier described the activity in the state trial court that he found to offend the federal constitution – the punishing of conduct not criminal, at the time the conduct occurred – and that conduct which was precluded by the United States Supreme Court in the *Marks* case cited by Spanier in the very same paragraph.[4]

---

[4] The Supreme Court, in *Marks*, held "… that the Due Process Clause precludes the application to petitioners of the [new] standards… to extent that those standards may impose criminal liability for conduct not punishable under [case law, at time of conduct]." *Marks v. U.S.*, 430 U.S. 188, 196 (1977).

Spanier fairly presented the issue of the unconstitutional application of a 2007 statute to 2001 conduct to the Pennsylvania Superior Court by citing the relevant provision of the United States Constitution and federal cases supporting his argument. *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280–81 (3d Cir. 2018); see also *Wilkerson v. Superintendent*, 871 F.3d 221, 228–29 (3d Cir. 2017). As such, he has fully exhausted this claim.

B. GROUND TWO: JURY INSTRUCTIONS ON 2007 STATUTE FOR 2001 CONDUCT

Respondents also submit that Spanier's claim related to the jury instruction on the 2007 statute is procedurally defaulted. (Doc. 21, at 29). Specifically, Respondents claim that Spanier "raised only state law-based and *Ex Post Facto* challenges to the jury instruction, the latter of which, as previously discussed, are inapplicable to judicial determinations." (Doc. 21, at 29).  On state court review, a citation of a relevant provision of the federal constitution and federal cases supporting petitioner's argument constitutes exhaustion of a § 2254 claim. *Bennett*, 886 F.3d, at 281 (citations omitted). In the section of his brief to the Pennsylvania Superior Court about the jury instructions used, at trial, Spanier stated "[t]he trial court erred in instructing the jury on the 2007 version of the child-endangerment statute, rather than the 2001 version." (Doc. 23-9, at 18). In support of his argument, Spanier submits that the instructions violated "the principles of the *Ex Post Facto* clauses of the state and federal constitutions, as well as Dr. Spanier's due process rights…." (Doc. 23-9, at 18). In the same section of that brief, Spanier cites to relevant federal case law[5] for the principle that "a trial

---

[5] *United States v. Marcus*, 560 U.S. 258, 263-64 (2010) (Doc. 23-9, at 19).

12

court should not instruct a jury on a version of an offense that did not exist, at the time of the conduct the jury is considering when determining a defendant's guilt." (Doc. 23-9, at 18-19).

As such, the Court finds that Spanier fairly presented the issue of the unconstitutionality of instructing a jury on the 2007 statute, rather than the 2001 version, such that he has fully exhausted this claim.

## C. GROUND THREE: APPLICATION OF STATUTE OF LIMITATIONS EXCEPTIONS

Finally, Respondents submit that Spanier failed to exhaust his statute of limitations argument because he had "previously couched his challenges to the state courts' rulings on this issue exclusively as questions of state law…." (Doc. 21, at 31). Again, Spanier asserts that he fairly presented this claim as a due process challenge, that he outlined the factual and legal basis of that claim, and further, that the federal and state constitutions use the same due process analysis. (Doc. 23, at 13).

As discussed *supra*, to "fairly present" a claim for exhaustion purposes, the petitioner must advance "a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). So long as that federal claim is asserted in "terms so particular as to call to mind a specific right protected by the [federal] Constitution" the claim will be exhausted. *McCandless*, 172 F.3d, at 260. Further, only a "basic factual outline" of the claim need be presented. A petitioner need not explicitly reference federal law in order to fairly present his claim. *See e.g.*, *Picard*, 404 U.S., at 278, 92 S.Ct. 509; *McCandless*, 172 F.3d, at 261 ("the absence of explicit reference to federal law does not resolve the issue of whether a federal

claim was fairly presented"); *Evans*, 959 F.2d, at 1231 (noting some of the "ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution").

Respondents' sole argument on exhaustion of this ground is that Spanier had previously couched his challenges only as questions of state law. However, as stated, the petitioner need not explicitly reference federal law. Here, it is clear that the issue of due process was before the Superior Court, as it is addressed both in the majority opinion, and even more so in the dissenting opinion, which specifically addresses the manner in which due process requirements are met on this issue, and the due process concerns that must be satisfied. *Spanier*, 192 A.3d, at 163. As such, the Court finds that Spanier fairly presented the issue of the application of the statute of limitations exceptions to the state court such that he has fully exhausted this claim.

Having determined that Spanier has fully exhausted each of his claims in state court, the Court will turn to the merits of the Petition.

### III.   HABEAS CORPUS STANDARDS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is codified, at 28 U.S.C. § 2254(d), a habeas corpus petition can only succeed if Petitioner can show that (i) the state court's resolution of his claim was contrary to, or an objectively unreasonable application of, clearly established federal law and (ii) his claim is exhausted. See 28 U.S.C. § 2254(d)(1); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002); *Berryman v. Morton*, 100 F.3d 1089, 1103 (3d Cir. 1996).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a

set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives, at a [different] result.'" *Lambert v. Blackwell*, 387 F.3d 210, 234 (quoting *Williams v. Taylor*, 529 U.S., at 362, 405-06 (2000)). "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Lambert*, 387 F.3d, at 234 (quoting *Williams*, 529 U.S., at 407). An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable. *Williams*, 529 U.S., at 407. Clearly established federal laws are the holdings, not the dicta, of the Supreme Court. *Williams*, 529 U.S., at 390.

State court factual determinations are also given considerable deference under the AEDPA. *Lambert*, 387 F.3d, at 239. "A state court decision is an 'adjudication on the merits,' reviewed under the deferential standard of § 2254(d), where it is 'a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" *Simmons v. Beard*, 590 F.3d 223, 232 (3d Cir. 2009) (quoting *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)). Petitioner must establish that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

IV.   **DISCUSSION**

    A.  GROUND ONE: THE APPLICATION OF THE 2007 CRIMINAL STATUTE TO 2001 CONDUCT

In his first ground for relief, Spanier asserts that his conviction and sentence are based on the 2007 statute, and thus in violation of the *Ex Post Facto* and Due Process Clauses of the United States Constitution. (Doc. 1, at 6). Specifically, Spanier argues that the 2007 statute criminalized conduct that was "not criminal" in 2001—when his actions took place—and amended the 1995 statute to expand the scope of persons subject to liability. (Doc. 1, at 6-7). The 1995 statute, in effect during 2001, provides:

    **(a) Offense defined.** A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

    18 Pa.C.S.A § 4304 (1995).

In contrast, the amended 2007 statute states, in pertinent part:

    **(a) Offense defined.**

    (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

    (2) A person commits an offense if the person, in an official capacity, prevents or interferes with the making of a report of suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services).

    (3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

    18 Pa.C.S.A. § 4304 (2007).

Accordingly, based on the language added to the 2007 statute, Spanier avers that "someone who was *not* supervising the welfare of a child could be found guilty of violating the statute if he was employing or supervising someone else who was doing so." (Doc. 1, at 8). Respondents submit that the 2007 statute merely "made explicit" the criminalization of certain conduct, such as Spanier's actions in 2001, that the Pennsylvania Supreme Court , in *Lynn*, determined already existed under the 1995 statute. (Doc. 21, at 17).

> In addressing this issue, the Trial Court held:

> Based upon the Supreme Court's analysis in *Lynn* the EWOC statute, as it existed in 2001 when the incident at issue occurred, encompassed persons who employed or supervised persons who supervised the welfare of children. Thus, it is irrelevant that the statute was later changed to explicitly include this class of persons, because they were already included in the plain language of the 1995 statute. Therefore, as a person who employed or supervised persons who supervised the welfare of children, Defendant's conviction does not violate the *Ex Post Facto* clause.

> (Doc. 1-2, at 18).

Thus, the Trial Court determined that the decision in *Lynn* foreclosed any as-applied *Ex Post Facto* challenge raised by Spanier. (Doc. 1-2). Further, in addressing Spanier's weight of the evidence challenge to his conviction under § 4304(a)(1), the Trial Court concluded that, pursuant to *Lynn*, "[b]ecause [Spanier] was the president of the University where the incident occurred, the jury could properly find that [Spanier] supervised the physical and moral welfare of all minor children present on the University campus, even absent direct contact with them." (Doc. 1-2, at 19).

On direct appeal, the Superior Court did not expressly reference the *Ex Post Facto* or Due Process clauses with respect to the application of the 2007 statute to Spanier. (Doc. 1-1). However, it upheld, based on the facts before it, that "[Spanier] was supervising the welfare

of a child and owed a duty of care to the child." (Doc. 1-1, at 14). It also rejected the notion that the 1995 statute did not apply to him, as "[t]he absence of direct interaction between [Spanier], Schultz, or Curley and Sandusky's victims…does not preclude [Spanier's] conviction under the pre-2007 version of § 4304 as construed in *Lynn*." (Doc. 1-1, at 14). The Superior Court then concluded that "the language added in 2007 or, more appropriately, the language not included in the pre-2007 version, does not alter the result [in Spanier's case]." (Doc. 1-1, at 14).

Respondents contend that "[t]he 2007 version of the EWOC statute is relevant to this case only in that it made explicit the prohibition of certain conduct, such as Spanier's, that has been held to exist within the [1995] version of the statute." (Doc. 21, at 17). The Respondents also argue that Spanier's case "hinged solely" on the State Court's interpretation of a state criminal statute, which is not reviewable by a federal habeas court. (Doc. 21, at 17-18). Nonetheless, Respondents aver that Spanier's *Ex Post Facto* challenge is without merit, as the *Ex Post Facto* Clause only applies to legislative acts and not judicial determinations. (Doc. 21, at 18). They further claim that Spanier's only ground for relief would be rooted in the Due Process Clause, insofar as Spanier contests an "unexpected and indefensible" judicial construction of 18 Pa.C.S. § 4304. (Doc. 21, at 18).

Article I, § 10, of the Constitution prohibits the States from passing any "*Ex Post Facto* law." "The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 266 (1994). Specifically, this clause forbids enactment of any law "which imposes a punishment for an act which was not punishable, at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325–26, 18 L.Ed. 356

(1867)). The crux of the Constitution's *Ex Post Facto* prohibition is that a person should be given fair notice of an offense, or of the punishment for that offense, prior to the offense's commission. *See Weaver*, 450 U.S., at 28-29 (Through the *Ex Post Facto* Clause, "the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed."); *see also Peugh v. United States*, 569 U.S. 530, 544 (2013) (the *Ex Post Facto* Clause "safeguards 'a fundamental fairness interest ... in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.'") (quoting *Carmell v. Texas*, 529 U.S. 513, 533 (2000)); *Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (the original understanding of the *Ex Post Facto* Clause is that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.").

The Supreme Court has articulated that the *Ex Post Facto* Clause only refers to "certain types of criminal laws," first categorized in 1798 as follows: (1) "Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action"; (2) "Every law that aggravates a crime*, or makes it greater than it was, when committed*"; (3) "Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed"; and (4) "Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required, at the time of the commission of the offence, in order to convict the offender." *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798); *accord Carmell v. Texas*, 529 U.S. 513, 522 (2000). A statute is not "impermissibly retroactive" merely because it is applied to a conduct that pre-dates its enactment—"[r]ather, the court must ask whether the new provision, attaches new legal consequences to events completed before its enactment." *Brand Energy & Infrastructure*

19

*Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 1105648, at *5 (E.D. Pa. Mar. 24, 2017) (quoting *Landgraf*, 511 U.S., at 269-70); *see also Collins v. Youngblood,* 497 U.S. 37 (1990) (noting that the United States Constitution does not prohibit every retrospective law that alters a party's situation to his disadvantage). Thus, the Supreme Court has further clarified the categories originally set forth in *Calder*, and held that a law is unconstitutional under the *Ex Post Facto* clause if it "(1) punishes as a crime an act that was innocent when done, or (2) makes more burdensome the punishment for a crime after its commission, or (3) deprives one charged with a crime of any defense available according to law, at the time the act was committed." *Helton v. Fauver*, 930 F.2d 1040, 1045 (3d Cir. 1991) (citing *Beazell v. Ohio*, 269 U.S. 167, 170 (1925)). The Supreme Court has additionally emphasized that "it is the effect, not the form, of the law that determines whether it is *ex post facto.*" *Weaver*, 450 U.S., at 31.

Spanier submits that the retroactive application of the 2007 statute to his 2001 conduct violates the *Ex Post Facto* and Due Process clauses. He is not challenging the state court's interpretation of *Lynn*, or its construction of the 1995 statute. Rather, he argues that the 2007 statute criminalizes conduct that, in effect, was innocent under the 1995 Statute, and it was the application of the later statute to his conduct which violated his constitutional rights.

"Although the state court's determination of state law is for the state courts to determine, the federal court still must determine whether the change in state law wrought by the state court violates the *Ex Post Facto* Clause." *Fisher v. Beard*, No. CV 03-788, 2018 WL 3594990, at *8 (E.D. Pa. July 25, 2018). Following Spanier's conviction, the Court of Common Pleas of Dauphin County issued a trial court opinion on September 22, 2017. (Doc.

1-2). Therein, the trial court addressed Spanier's argument regarding the application of the

2007 Statute to Spanier's conduct, and found as follows:

> The Court instructed the jury pursuant to the 2007 version of Section 4304…Defendant claims that utilization of the 2007 version of Section 4304 violates the *Ex Post Facto* clause because the actions that he was convicted of occurred in 2001, and the 2007 amendment expanded the scope of the statute to include persons employing or supervising someone who is supervising the welfare of a child. Thus, he appears to be asserting that his actions were innocent when done in 2001, but did not become criminal until the 2007 amendment.

> In order to determine whether or not this violates the *Ex Post Facto* clause, it is necessary to examine the history behind the change in law. In *Com. v. Lynn,* 114 A.3d 796 (Pa. 2015), a priest by the name of William Lynn was Secretary of the Clergy in the Archdiocese of Philadelphia. In this position, Lynn was responsible for ensuring that parishes had enough priests, resolving disputes among priests and handling clergy sexual abuse issues. *Id.* at 798. Near the end of his tenure as Secretary of the Clergy, the Philadelphia District Attorney began investigating the Archdiocese of Philadelphia for clergy sex abuse complaints. *Id.* at 806-07. A grand jury was empaneled, and Lynn was subpoenaed to testify and provide documents related to priests accused of sexual abuse. *Id.* at 807.

> The grand jury issued a report in 2005, concluding that the statute pertaining to the crime of endangering the welfare of a child was written in a way that would allow church officials, such as Lynn to escape criminal liability. *Id.*. The report further concluded that the offense of endangering the welfare of a child is too narrow to support prosecution of the decision makers who were running the Archdiocese because they were too far removed from any direct contact with children. *Id.* Based on this interpretation, the grand jury did not recommend any criminal charges against Lynn, but instead recommended that the statute be amended to include those who were in an employer or supervising capacity. *Id.* The legislature complied with this recommendation in 2006 and amended the statute, effective January 27, 2007 to include the above-stated language. *Id.*

> Despite this grand jury report, the Commonwealth charged Lynn in 2011 with two counts of Endangering the Welfare of a Child (EWOC) and two counts of conspiracy to commit same. *Id.* Lynn sought to quash these charges on the basis that he had no connection to the children whose welfare he was accused of having endangered. *Id.* at 808. After a trial, Lynn was found guilty of one count of EWOC and appealed that conviction to the Superior Court, where it was overturned. The Commonwealth appealed to the Pennsylvania

Supreme Court, and their petition for allowance of appeal was granted to address, in relevant part, whether or not the evidence was sufficient to prove endangering the welfare of children when Lynn did not have direct contact with those children. *Id.* at 817.

On appeal, the Pennsylvania Supreme Court noted that, although criminal statutes are generally to be strictly construed, in the unique case of EWOC, the statute must be construed in order to effectuate its broad purpose of protecting children. *Id.* at 818. Specifically, the juvenile statutes are written expansively to criminalize behavior that produces or tends to produce a defined result, rather than preparing a list of all illegal conduct. Id. Thus, the EWOC statute is drawn broadly to criminalize conduct that involves the endangering of the physical or moral welfare of a child. *Id.* at 819.

Based on the language of the 1995 statute, the Pennsylvania Supreme Court held that the statute was unambiguous that it is not the child that Lynn must have been supervising, but the child's welfare. *Id.* at 823. Therefore, the Commonwealth need only have demonstrated evidence that Lynn was supervising the child's physical or moral welfare. *Id.* at 824. However, the requirement of supervision was not limited to only direct or actual supervision. Id. Rather, the plain terms of the statute, as it existed from 1995 until 2007, encompasses all forms of supervision of a child's welfare. *Id.* Supervision is often done through subordinates, but that does not make it any less supervisory if it does not involve personal encounters with the children at issue. *Id.* Therefore, depending on the facts of a case, a school principal or manager of a day care center could be held criminally liable for endangering the welfare of the children under their supervision if they knowingly place sexually abusive employees in such proximity to them as to allow for the abuse of these youth. *Id.*

**Based upon the Supreme Court's analysis in *Lynn*, the EWOC statute, as it existed in 2001 when the incident at issue occurred, encompassed persons who employed or supervised persons who supervised the welfare of children. Thus, it is irrelevant that the statute was later changed to explicitly include this class of persons, because they were already included in the plain language of the 1995 statute. Therefore, as a person who employed or supervised persons who supervised the welfare of children, Defendant's conviction does not violate the *Ex Post Facto* clause.**

(Doc. 1-2, at 16-18) (emphasis added).

Given this reasoning, Spanier argues that the trial court found he was "properly convicted" under the EWOC statute as an employer or supervisor of a supervisee in 2001.

(Doc. 1, at 9). However, Spanier asserts that the Superior Court misunderstood his challenge to this finding on direct appeal. (Doc. 1, at 9). Notably, without expressly referencing the *Ex Post Facto* or Due Process clauses, the Superior Court concluded as follows:

> "[W]e consider Appellant's argument that the version of § 4304 extant in 2001 did not apply to him because he did not supervise children directly. The *Lynn* Court wrote: 'A subsequent change in language does not retroactively alter the legislative intent that is apparent in the plain language of the prior version of the statute.' *Id.* at 827. Thus, the *Lynn* Court upheld the defendant's conviction under the pre–2007 version of EWOC even though the pre–2007 did not expressly apply to a person 'who employs or supervises' someone supervising the welfare of a child. Appellant would distinguish *Lynn* because the defendant there was supervising priests who directly interacted with children. Here, in contrast, there is no evidence that Appellant supervised anyone who interacted directly with Sandusky's minor victims. As we have already explained above, the *Lynn* Court held that § 4304 applies to persons who supervise a child's welfare, not persons who supervise a child. **The absence of direct interaction between Appellant, Shultz, or Curley and Sandusky's victims therefore does not preclude Appellant's conviction under the pre–2007 version of § 4304 as construed in *Lynn*.**"

(Doc. 1-1, at 14); *Commonwealth v. Spanier*, 2018 PA Super 184, 192 A.3d 141, 153–54 (2018), *reargument denied* (Sept. 7, 2018), *appeal denied*, 203 A.3d 199 (Pa. 2019) (emphasis added).

Accordingly, Spanier argues that the Superior Court upheld his conviction as an employer or supervisor of a person that supervised the welfare of children—as concluded by the trial court in its September 22, 2017 opinion—based on *Lynn*'s proposition that direct interaction need not occur to supervise the welfare of a child under the 1995 Statute. (Doc. 1, at 9-10).

Upon review of the Trial and Superior Court opinions, it is evident that both effectively determined the holding in *Lynn* foreclosed any *Ex Post Facto* challenge raised by Spanier.[6] (Doc. 1-1; Doc. 1-2). However, while federal habeas courts are "bound by a state supreme court's construction of a state penal statute," they are not "bound by the state court's determination as to whether its construction offends the federal Constitution." *Helton v. Fauver,* 930 F.2d 1040, 1044 (3d Cir. 1991) (citing *Missouri v. Hunter,* 459 U.S. 359, 368 (1983)). As the State Court's conclusion regarding Spanier's *Ex Post Facto* challenge appears to have relied on an interpretation of state law, which is entitled to deference under the AEDPA, the Court must "merely determine whether that interpretation of state law, enunciated after the crime was committed, violates the *Ex Post Facto* Clause." *Fisher v. Beard*, No. CV 03-788, 2018 WL 3594990, at *8 (E.D. Pa. July 25, 2018) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)). "In the *ex post facto* context, the question of whether a federal court must defer to the state court's statutory interpretation turns on whether the state court's interpretation was foreseeable." *Fisher*, 2018 WL 3594990, at *8.

The *Ex Post Facto* clause "is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Marks v. United States,* 430

---

[6] Although the trial court's opinion appears to have implicitly considered whether the 2007 Statute fell within the first *Calder* category, by recognizing Spanier's argument that the amendment widened the net of persons subject to liability, it does not appear to have based its conclusion on whether the amended statute, as applied to Spanier, constituted an *ex post facto* law as applied. (Doc. 1-2). Rather, it—as well as the Superior Court—based its conclusion on the application of *Lynn* in order to justify the use of the 2007 Statute. (Doc. 1-1; Doc. 1-2).

U.S. 188, 191 (1977) (citation omitted). Nonetheless, "limitations on *Ex Post Facto* judicial decision making are inherent in the notion of due process." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). "Just as legislatures are barred from passing laws that unforeseeably enlarge criminal statutes by the *Ex Post Facto* Clause, so are courts 'barred by the Due Process Clause from achieving precisely the same result by judicial construction.'" *United States v. Null*, No. CRIM.A. 04-253, 2005 WL 1527747, at *3 (E.D. Pa. June 28, 2005). As such, an "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *Ex Post Facto* law, such as Art. I, § 10 of the Constitution forbids." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964); s*ee also Rogers v. Tennessee*, 532 U.S. 451, 458-60 (2001) (holding that an unforeseeable judicial enlargement of a criminal statute, applied retroactively, violates the federal due process right to fair warning of what constitutes criminal conduct); *Marks,* 430 U.S., at 191–92 (same). In particular, a defendant's due process rights are violated when a court applies a construction of the statute that "is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie,* 378 U.S., at 354, 84 S.Ct. 1697 (internal quotation marks and citation omitted); *see also Rogers* 532 U.S., at 455-57 (when a court's judicial interpretation expands a criminal statute, or a prior judicial interpretation of the same, and said construction "is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, the construction must not be given retroactive effect.").

Spanier submits that the retroactive application of the 2007 statute to his 2001 conduct violates the *Ex Post Facto* and Due Process clauses. He is not challenging the state court's interpretation of *Lynn*, or its construction of the 1995 statute. Rather, he argues that the 2007

statute criminalizes conduct that, in effect, was innocent under the 1995 statute, and that the application of the later statute to his conduct violated his constitutional rights.

"Although the state court's determination of state law is for the state courts to determine, the federal court still must determine whether the change in state law wrought by the state court violates the *Ex Post Facto* Clause." *Fisher v. Beard*, No. CV 03-788, 2018 WL 3594990, at *8 (E.D. Pa. July 25, 2018); *see also Helton v. Fauver,* 930 F.2d 1040, 1044 (3d Cir. 1991) (while federal habeas courts are "bound by a state supreme court's construction of a state penal statute," they are not "bound by the state court's determination as to whether its construction offends the federal Constitution.") (citing *Missouri v. Hunter,* 459 U.S. 359, 368 (1983)). Thus, at issue is whether the State Court's interpretation of the 1995 statute, and by implication the 2007 statute, was "foreseeable" *Fisher v. Beard*, No. CV 03-788, 2018 WL 3594990, at *8 (E.D. Pa. July 25, 2018). Respondents submit that the Court's interpretation of *Lynn* was reasonable and foreseeable. Setting aside that the *Lynn* case was decided in 2015, nearly 14 years after the conduct at issue in this case, the Court finds that the state court's determination that the 2007 statute effectively subsumes the 1995 statute, therefore foreclosing any *Ex Post Facto* argument, was unforeseeable and in violation of Spanier's due process rights.

The plain language of the 1995 statute, in effect in 2001, is such that, if not a parent or guardian of a child, a defendant must be supervising the welfare of a child to be culpable under that statute. The plain language of the 2007 amended statute does not just clarify who may be considered to be "supervising the welfare of a child" but adds a fourth category of persons potentially culpable – those individuals "employing or supervising" such a person. A review of the legislative history and intent, and the application of this statute by state courts makes

clear that in 2001, Spanier could not have reasonably foreseen liability under the revised statute.

The original 1995 statute was derived from Section 230.4 of the Model Penal Code (1962); *Com. v. Taylor*, 471 A.2d 1228, 1230 (1984). The rationale behind the drafting § 230.4 provides:

> Section 230.4 reflects the judgment that penal prohibitions of contributing to the delinquency of a minor should not be continued. The basic error in such legislation [preceding § 230.4] is the assumption that the vague and comprehensive terms used to confer jurisdiction on juvenile courts are also appropriate for definition of a criminal offense. **It is one thing to vest expansive authority in an agency charged with promoting the welfare of children and quite another to give a court equivalent latitude in defining crimes for which adults may be subjected to penal sanctions. Statutes broadly condemning any conduct that contributes to the delinquency of a minor contravene the general precept that criminal laws should state their proscriptions with fair specificity and precision**.

> MODEL PENAL CODE § 230.4 cmt. 2, at 449 (AM. LAW INST., Official Draft and Revised Comments 1980) (emphasis added).

The drafting comments also indicate that "[t]he specification that the actor's conduct must violate a duty of 'care, protection, or support' makes clear that the provision applies only to those legal duties arising by reason of the actor's status as a 'parent, guardian, or other person supervising the welfare of a child.'" MODEL PENAL CODE § 230.4 cmt. 2, at 451 (AM. LAW INST., Official Draft and Revised Comments 1980). Accordingly, such a duty is expressly distinguishable from "a legal duty owed by all citizens to one another or by violating a duty which a stranger may owe to a minor." MODEL PENAL CODE § 230.4 cmt. 2, at 451 (AM. LAW INST., Official Draft and Revised Comments 1980). Indeed, "[t]he objective [of § 230.4] is to confine criminal punishment for endangering the welfare of children to consequential acts violative of some settled obligation springing from the supervisory

relationship of actor to child." MODEL PENAL CODE § 230.4 cmt. 2, at 451 (AM. LAW INST., Official Draft and Revised Comments 1980).

Importantly, the MPC comments note that there must be some duty beyond just that owed "by all citizens to one another" and require that criminal punishment under this section must spring from some relationship between the actor and the child. Initially, the Court notes that this belies the state court's broad conclusion that, pursuant to *Lynn*, "[b]ecause [Spanier] was the president of the University where the incident occurred, the jury could properly find that [Spanier] supervised the physical and moral welfare of all minor children present on the University campus, even absent direct contact with them." (Doc. 1-2, at 19). This distinction is further highlighted by Pennsylvania case law addressing the persons who may be liable under the 1995 Statute, prior to the holding articulated in *Lynn*.[7] For instance, in *Com v. Brown*,

---

[7] The Court recognizes that the Pennsylvania Supreme Court addressed a similar proposition in *Lynn*, ultimately finding as follows:

> "Finally, Appellee argues that the EWOC statute has not heretofore been applied to someone like himself, who did not come into contact with the children whose welfare he endangered. We find this argument to be inconsequential and irrelevant. Our analysis of the plain language of the EWOC statute and examination of whether the voluminous facts of record met the supervision element of the offense are not dependent on the factual circumstances that led to convictions in prior cases."

*Com. v. Lynn*, 114 A.3d 796, 827 (2015).

While the Court does not disturb this finding, it notes that a dearth of such convictions under the 1995 Statute may impact whether it was foreseeable that an employer of a child's supervisor—as opposed to someone who indirectly supervised the welfare of a child, as held in *Lynn*—could be subject to liability under its provisions. Further, although its decision was ultimately reversed, the Pennsylvania Superior Court even noted that "neither this Court nor

the Superior Court found that a person was not required to be a parent or guardian of a child in order to be convicted under the 1995 Statute. 721 A.2d 1105, 1107 (Pa. Super. Ct. 1998). Specifically, the Court noted that "[i]n an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a non-custodial child from the scope of a statute protecting the physical and moral welfare of children." *Brown*, 721 A.2d at 1107. The Court also cited to its holding in *Commonwealth v. Kellam*, 719 A.2d 792 (Pa. Super. 1998)[8] for the proposition that "whenever a person is placed in control and supervision of a child, that person has assumed such a status relationship to the child so as to impose a duty to act." *Brown*, 721 A.2d at 1107 n. 4. However, it affirmed that whether a person supervises the welfare of a child is "a factual one which should be decided on by a case by case basis." *Brown*, 721 A.2d at 1108 n. 6. This hardly establishes the proposition that the 2007 Statute, insofar as it addresses "employers" who merely supervise supervisees, necessarily means an employer may be found liable as an indirect supervisor of a child's welfare. Indeed, even on a case-by-

---

our Supreme Court has ever affirmed a conviction for EWOC where the accused was not actually engaged in the supervision of, or was responsible for supervising, the endangered child." *Com. v. Lynn*, 83 A.3d 434, 450 (2013), *rev'd*, 631 Pa. 541, 114 A.3d 796 (2015).

[8] "In the instant case, appellant resided with the victim and her mother, exercised a great deal of control over the mother, and voluntarily assumed parental responsibilities with regard to the child. We therefore hold that whenever a person is placed in control and supervision of a child, that person has assumed such a status relationship to the child so as to impose a duty to act." *Com. v. Kellam*, 719 A.2d 792, 796 (Pa. Super. Ct. 1998).

case basis, the Pennsylvania Courts generally required, prior to *Lynn*, that an individual be engaged in a child's welfare to be encompassed under the statute.

Moreover, and critical to the question of foreseeability, the 2007 language was added to the statute *after* a grand jury determined that the older version of the statute was written too narrowly to sustain criminal charges against high-level Archdiocesan officials, and recommended that the class of individuals contemplated by the statute be expanded to cover those who employ or supervise a person who supervises a child's welfare. Act of Nov. 29, 2006, No. 179, 2006 Pa. Laws 1581 (codified as amended, at 18 Pa. Stat. and Cons. Stat. Ann. § 4304(a)(1) (West 2007)); *Commonwealth v. Spanier*, 2018 Pa. Super 184, 192 A.3d 141, 151–52 (2018), *reargument denied* (Sept. 7, 2018), *appeal denied*, 203 A.3d 199 (Pa. 2019). The 2007 statute clearly broadened the class of persons subject to being charged under the statute, adding a separate definition of individuals who may be culpable to include "a person that employs or supervises such a person." In broadening that class of persons, the statute, attached "new legal consequences to events completed before its enactment." *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 1105648, at *5 (E.D. Pa. Mar. 24, 2017) (quoting *Landgraf*, 511 U.S., at 269-70).

The Court finds that the state court's conclusion, upholding Spanier's conviction on the basis of the 2007 statute, based on an unforeseeable interpretation of the 1995 statute and of the Pennsylvania Supreme Court's decision in *Lynn*, constituted an unreasonable

application of Supreme Court precedent set forth in *Bouie*.[9] As such, the application of that statute to Spanier's conduct is an unconstitutional retroactive application of the law.

### B. GROUND TWO: JURY INSTRUCTIONS ON 2007 STATUTE FOR 2001 CONDUCT

In his second ground for relief, Spanier argues that his due process rights were violated when the jury was improperly instructed under the 2007 statute. (Doc. 1, at 11-14). Specifically, Spanier asserts that the State Court could not rely on the amended 2007 statute, which was enacted six year after his conduct at issue, to instruct the jury. (Doc. 1, at 12). As such, Spanier claims that, given the jury instructions provided, it is impossible to determine whether he was convicted (1) as a person "supervising the welfare of a child" or (2) a person

---

[9] Additionally, it is worth noting that in *Bouie* the Supreme Court held,

"We think it clear that the South Carolina Supreme Court, in applying its new construction of the statute to affirm these convictions, has deprived petitioners of rights guaranteed to them by the Due Process Clause. If South Carolina had applied to this case its new statute prohibiting the act of remaining on the premises of another after being asked to leave, the constitutional proscription of *ex post facto* laws would clearly invalidate the convictions. The Due Process Clause compels the same result here, where the State has sought to achieve precisely the same effect by judicial construction of the statute. While such a construction is of course valid for the future, it may not be applied retroactively, any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal."

*Bouie v. City of Columbia*, 378 U.S. 347, 362, 84 S. Ct. 1697, 1707, 12 L. Ed. 2d 894 (1964).

Although dicta, the Court finds this reasoning to be highly persuasive to the facts of the case before it. In effect, following the Supreme Court's reasoning in *Bouie*, the state court's construction of the 1995 statute in *Lynn* to effectively adopt the language of the 2007 amendment, operate as a violation of the *ex post facto* and due process clauses.

that employed or supervised such a person. (Doc. 1, at 12). He further argues that such a challenge does not constitute a collateral attack on state-court jury instructions, as "habeas petitions frequently challenge state-court instructions on the ground that they violate the constitution." (Doc. 23, at 17).  In short, Spanier submits that the jury instruction based on the 2007 statute allowed the jury to convict Spanier even if he was not supervising the welfare of a child, but if they found that he was simply employing or supervising someone else. Critically, under the 1995 version of the statute, there would have had to be a finding by the jury that Spanier was also supervising the welfare of children. The jury, as instructed, did not have to reach that conclusion in order to convict Spanier here. Unlike in the *Lynn* case, where the court gave the jury just those three options available under the 1995 statute, here, the court instructed the jury that it could convict Spanier under that fourth possibility as well – that he was a person employing or supervising a person supervising the welfare of a child – language that was only added to the statute in 2007, years after Spanier's conduct. (Doc. 1-4, at 4). There was no instruction to the jury that they were to determine whether Spanier "supervised the welfare of a child."

Emphasizing that questions regarding jury instructions normally fall within the province of state law, and that the State Court thoroughly explained why the inclusion of the 2007 language in the jury instruction was proper in Spanier's case, Respondents argue that the State Court's determination—that the jury instruction was proper as a matter of state law—cannot be disturbed on habeas review. (Doc. 21, at 28, 30). Respondents further claim that this ground for relief is linked to Ground I, which rests upon the judicial interpretation of the scope of the 1995 statute. (Doc. 21, at 28).

In addressing the issue on direct review, the Superior Court concluded as follows:

Appellant claims the trial court erred in refusing to instruct the jury on the statute of limitations, and that the trial court erred in instructing the jury on the 2007 version of EWOC. "[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (quoting *Commonwealth v. Trippett*, 932 A.2d 188, 200 (Pa. Super. 2007) ), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014).

Prior to trial, Appellant submitted a proposed jury instruction for child endangerment that reflected the language of the 2001 statute and the Pennsylvania Supreme Court's interpretation of that statute, and he requested an instruction on the statute of limitations. The trial court stated that it would give the standard jury instruction on child endangerment and would charge the jury according to the 2007 version of the statute. Given our analysis of the statute of limitations and of the *Lynn* Court's treatment of the pre–2007 version of § 4304, we discern no reversible error.

…

Regarding the EWOC conviction, we have concluded that the language added in 2007 or, more appropriately, the language not included in the pre-2007 version, does not alter the result here. On the facts of this case, the trial court's instruction on the 2007 version of the EWOC statute did not result in an inaccurate statement of the law.

(Doc. 1-1, at 14). *Commonwealth v. Spanier*, 192 A.3d 141, 154 (2018), *reargument denied* (Sept. 7, 2018), *appeal denied*, 203 A.3d 199 (Pa. 2019).

As previously articulated by the Supreme Court with respect to constitutional

challenges to jury instructions:

Our habeas precedent places an "especially heavy" burden on a defendant who…seeks to show constitutional error from a jury instruction that quotes a state statute. Even if there is some "ambiguity, inconsistency, or deficiency" in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. In making this determination, the jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Because it is not enough that there is some "slight *possibility*" that the jury

33

misapplied the instruction, the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process…'"

*Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (internal citations and quotations omitted)

A court's "analysis of jury instructions claimed to impair a constitutional right 'must focus initially on the specific language challenged.'" *Smith v. Horn*, 120 F.3d 400, 411 (3d Cir. 1997) (quoting *Francis v. Franklin,* 471 U.S. 307, 315 (1985)). Here, the jury was instructed on the basis of the broader 2007 statute, instead of the 1995 statute in effect during 2001. The trial court defined the term "supervising the welfare of a child" in accordance with the language of 2007 statute, and not the 1995 statute:

> Third, that the defendant was, at the time a parent, guardian, person supervising the welfare of a child under the age of 18, or a person that employs or supervises such a person. The term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training, or control of a child.

> (Doc. 1-4, at 4)

Insofar as the state court relied on *Lynn* to uphold Spanier's conviction on this ground, the *Lynn* court solely relied on the language of the 1995 statute and did not reference the 2007 statute. Indeed, the jury instruction in *Lynn* provided as follows:

> Third, that the defendant was, at the time a parent, guardian, or person supervising the welfare of the child under the age of 18…when determining whether the defendant [Lynn] is included under the term supervising the welfare of a child, you jurors should make this determination keeping in mind the common sense of the community as well as the statute's purpose, which is to prohibit a broad range of conduct in order to safeguard the welfare and security of children.

> (Doc. 1-5, at 3).

34

In the context of the instruction as a whole, the Court finds that there is a "reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990)). Further, it seems clear that the error created a risk that the jury would convict Spanier solely on the basis of conduct that was not criminal when he engaged in that conduct. *See United States v. Marcus*, 560 U.S. 258, 263–64 (2010). As the Supreme Court in *Marcus* noted, that risk could be minimized, if not eliminated, by giving the jury a proper instruction. *Id.* Further, "[w]here an allegedly faulty jury charge implicates a habeas petitioner's federal constitutional rights…we have an independent duty to ascertain how a reasonable jury would have interpreted the instructions, at issue." *Smith v. Horn*, 120 F.3d 400, 413 (3d Cir. 1997) (citing *Francis,* 471 U.S., at 315–16; *Sandstrom*, 442 U.S., at 516–17).

The clear implication of the trial court's charge in this case is that the jury was allowed to convict Spanier either on the basis of being a person "that provides care, education, training, or control of a child" *or* "a person that employs or supervises such a [supervisee]" (Doc. 1-4, at 4). That second possibility was only available through the 2007 statute. Accordingly, despite the state court's conclusion that providing an instruction based on the 2007 statute did not "result in an inaccurate statement of law," there is a reasonable likelihood that the jury understood the charge provided as allowing them to convict Spanier either: (1) as a person that supervises the welfare of a child; or (2) as a person who did not supervise the welfare of a child, but merely supervised or employed persons who did. When taken as a whole, there is a reasonable likelihood that the jury convicted Spanier based on conduct that was not criminal under the 1995 statute. Further, the charge could have been interpreted by the jury as relieving the Commonwealth of its burden to prove that Spanier was "a person

35

supervising the welfare of children," as opposed to merely the supervisor employer of a person who did (as allowed by the 2007 statute but not the 1995 statute). It is well-settled that "the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970) (internal citations omitted). A jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state of its obligation to prove facts constituting every element of the offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights. *See Carella v. California,* 491 U.S. 263, 265 (1989) (per curiam); *see also Polsky v. Patton,* 890 F.2d 647, 651 (3d Cir.1989) (no due process violation where jury instruction "did not omit any essential element of the crime charged"); *Smith v. Horn,* 120 F.3d 400, 415 (3d Cir. 1997). Effectively, by instructing the jury on the language of the 2007 statute, it is possible that the jury did not conclude that Spanier was a "person supervising the welfare of the children" (a required finding for a conviction under the 1995 statute), thus relieving the Commonwealth of its burden of proof under that version of the statute. This constitutes a deprivation of Spanier's right to due process.

Neither Spanier nor the Commonwealth address whether such a constitutional error would be considered harmless error by the state court, but such an analysis must be conducted by this Court. *See Smith v. Horn,* 120 F.3d, at 416–17 (where such a constitutional error has occurred, it is subject to "harmless error" analysis); *Neder v. United States,* 527 U.S. 1, 8–11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." *Smith v. Horn,* 120 F.3d, at 418 (citing

36

*California v. Roy,* 519 U.S. 2, 5 (1996)); *Muscio v. New Jersey*, No. 02-1892 (DMC), 2005 WL 2600256, at *8 (D.N.J. Oct. 13, 2005); s*ee also United States v. Marcus*, 560 U.S. 258, 264–65 (2010) (regardless of whether petitioner brought his jury instruction claim under an *Ex Post Facto* or due process theory, "we see no reason why this kind of error would automatically "affec[t] substantial rights" without a showing of individual prejudice.")

An error must have a "substantial and injurious effect or influence in determining the jury's verdict" before it can be considered harmful and require relief. *Whitney v. Horn*, 280 F.3d 240, 257 (3d Cir. 2002); citing *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The Supreme Court has held that if a habeas court "is in grave doubt as to the harmlessness of an error," habeas relief must be granted. *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995).

Based on the jury instruction as a whole, the possibility that the jury convicted Spanier under the 2007 statute instead of the 1995 version is not remote. Given the Court's conclusion that the application of the 2007 statute to Spanier's 2001 conduct is unconstitutional, the Court has "grave doubts" as to the harmlessness of the jury instruction in this case. As such, the Court finds that the jury instruction on the basis of the 2007 statute deprived Spanier of his due process rights.

C. GROUND THREE: APPLICATION OF STATUTE OF LIMITATIONS EXCEPTIONS FOR WHICH THE PROSECUTION PROVIDED NO NOTICE BEFORE OR AT TRIAL

In his final ground for relief, Spanier argues that the application of the statute of limitations exception articulated in 42 Pa.C.S. § 5552(c)(3) violated his constitutional right to due process. (Doc. 1, at 14-19). Specifically, Spanier states that, as a criminal defendant, he was entitled to notice of the charges brought against him in order to prepare and present his

challenges accordingly. (Doc. 1, at 14). According to Spanier, an element of a criminal charge also includes "conduct that negatives a defense under the statute of limitation." (Doc. 1, at 14). Thus, Spanier asserts that due process required the Commonwealth to provide notice of the basis on which it intended to meet this element to negate any statute of limitations defense. (Doc. 1, at 15).

However, when Spanier raised the statute of limitations defense before trial, the Commonwealth solely relied on the statute of limitations provision enumerated in 42 Pa.C.S. § 5552(d) to support its contention that prosecution was timely. (Doc. 1, at 15). The Commonwealth asserted that Spanier had engaged in a "course of conduct of endangering child welfare," and the limitations period did not run until such conduct terminated under 42 Pa.C.S. § 5552(d).[10] (Doc. 1, at 15). However, according to Spanier, relying on this provision to support a timely prosecution was no longer apposite once the jury found that he had not engaged in such a course of conduct. (Doc. 1, at 15). Nonetheless, on direct review, the State Court found that Spanier's prosecution was timely because a tolling exception, never

---

[10] At trial, the Commonwealth prosecuted Spanier under 18 Pa. C.A. § 4304(b)(1)(ii) ("felony charge"), a felony grade EWOC offense. (Doc. 1-1 at 8). The jury found Spanier guilty of the lesser-included offense, 18 Pa. C.A. § 4304(b)(1)(ii) ("misdemeanor charge"), a misdemeanor grade EWOC offense. The Commonwealth initially sought to prove Spanier engaged in a course of conduct, which a conviction for the felony charge required. (Doc. 1-1 at 8). The jury found no course of conduct, and so convicted Spanier of the lesser-included offense. (Doc. 1-1 at 8). Given that the incident for which Spanier was convicted occurred in February 2001, the trial court relied on an exception to the statute of limitations. 42 Pa. C.S. § 5552(c). (Doc. 1-2 at 10-11).

previously invoked by the Commonwealth, applied. 42 Pa.C.S. § 5552(c)(3).[11] (Doc. 1, at 16-17).

Based on the Commonwealth's initial reliance on § 5552(c)(3) after the trial had ended, Spanier argues that the Commonwealth's failure to provide notice that it would be invoking § 5552(c)(3), instead of § 5552(d), deprived him of the opportunity to defend against such a charge, thereby violating his due process rights. (Doc. 1, at 16-17). Spanier additionally argues that, even though the Commonwealth put on "cursory evidence" of the victim's approximate age, the purported lack of notice surrounding the applicability of 5552(c)(3) prevented him from challenging this provision and attempting to establishing that the victim was older than 14 years old. (Doc. 1, at 16). Respondents emphasize that state court rulings on questions of state law are binding on federal habeas courts. (Doc. 21, at 31). Accordingly, Respondents assert that there is no valid basis to disturb the State Court's finding that Spanier was subject

---

[11] In upholding the trial court's decision, the Superior Court relied on state precedent which stands for the proposition that when a defendant is charged with a higher-grade offense, he's put on notice of lesser-included offenses. (Doc. 1-1 at 8); *Commonwealth v. Houck*, 102 A.3d 443, 449-50 (Pa. Super. 2014) (citing *Commonwealth v. Sims*, 919 A.2d 931 (Pa. 2007)). This statement of state law is correct. However, in the following sentence, the Superior Court goes on to say "[a]ttendant to [*Houck*'s lesser-included offense proposition], Appellant was on notice of the applicability of § 5552(c)(3), which expressly applies to offenses under § 4304." (Doc. 1-1 at 8). The Superior Court found that because no further facts were required to apprise Spanier that the Commonwealth intended to rely on an exception to the statute of limitations, notice requirements under due process were not violated here. (Doc. 1-1 at 10). In summing up its position that no further facts were required, the Superior Court states "***Bethlehem, Stockard, and Goldhammer*** are inapposite, as they, unlike the instant case, required that the defendant be given additional facts the Commonwealth intended to prove in order to comply with due process." (Doc. 1-1 at 11) (emphasis in original).

to a state law statute of limitations exception, and that he was properly put on notice of this possibility by the allegations, and evidence, set forth in his case. (Doc. 21, at 32).

At the outset, the Court again emphasizes that federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension. *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir.1997) (quoting *Geschwendt v. Ryan,* 967 F.2d 877, 888–89 (3d Cir.1992) (en banc)) (alteration and emphasis added). "[T]he Supreme Court has instructed that 'an indictment must contain all the elements of the charged offense to ensure that a grand jury found them present and to 'fairly inform[ ] a defendant of the charge against which he must defend,' as well as 'enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Indeed, "'[i]t is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made.'" *Rabe v. Washington*, 405 U.S. 313, 315 (1972) (quoting *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.")). Thus, the Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship,* 397 U.S. 358, 364 (1970).

Here, although a close determination, based on the facts presented, the Court is of the opinion that the State Court's conclusions did not constitute an unreasonable application of clearly established federal law. While Spanier relies on general propositions that "[a]

defendant's right to notice of the charges against which he must defend is well established," *Gray v. Netherland*, 518 U.S. 152, 167–68 (1996), the Court is not persuaded that relying on the statute of limitations associated with a lesser misdemeanor EWOC charge here, as opposed to a felony EWOC charge, "violate[d] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), and which define 'the community's sense of fair play and decency,' *Rochin v. California*, 342 U.S. [ 165,] 173 [(19520].'' *United States v. Lovasco*, 431 U.S. 783, 790 (1977). While the Court does not condone the Commonwealth's reliance on § 5552(c)(3) following the jury's finding that Spanier could not be convicted under the felony EWOC charge, it simply determines that such conduct could not render Spanier's trial so fundamentally unfair as to offend the Due Process Clause. Accordingly, the Court denies Spanier's claim for relief based on the application of the statute of limitations exception.


V.     **CONCLUSION**

In 2001, Petitioner, Graham B. Spanier, then President of the Pennsylvania State University, participated in formulating a response on behalf of the University to allegations of sexual abuse of a minor. As a result of this response, in 2012, Spanier was charged with endangering the welfare of a minor child under the 2007 version of the statute, despite his alleged conduct having occurred six years before the enactment of the 2007 amendment. That 2007 statute expanded the previous version of the statute to change the definition of who could be culpable for conduct under that law. The application of that 2007 statute to Spanier's conduct was a violation of the United States Constitution's *Ex Post Facto* and Due Process clauses. Further, at trial, the jury was instructed pursuant to that 2007 version, and the trial

court rejected the request by Spanier to instruct the jury on the version of the statute in place at the time of the 2001 conduct. This instruction was not harmless error, and further violated Spanier's right to due process.

In sum, the conviction in this matter was based on a criminal statute that did not go into effect until six years after the conduct in question, and is therefore in violation of Spanier's federal constitutional rights. For these reasons, the Court is compelled to grant Spanier's § 2254 petition, vacate his misdemeanor conviction, and direct the Commonwealth to retry him under the 1995 version of the statute within 90 days.

An appropriate Order follows.

Dated: April 30, 2019                           *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **United States Magistrate Judge**